1  Paul B. Nesbitt, Esq. (SBN 064432)
2  paul@nesbittlawllp.com
   Todd A. Nesbitt, Esq. (SBN 245295)
3  todd@nesbittlawllp.com
4  **NESBITT & NESBITT, LLP**
   9171 Wilshire Boulevard, Suite 400
5  Beverly Hills, California 90210-5516
6  Phone:          (310) 777-0448
7  Facsimile:      (310) 777-0441

8  Lauren J. Harrison, Esq.
9  lharrison@joneswalker.com
   C. Veronica Rivas, Esq.
10 vrivas.molloy@joneswalker.com
11 **JONES WALKER, LLP**
   First City Tower, Suite 2450
12 1001 Fannin Street
13 Houston, Texas 77002
14 Phone:          (713) 437-1800
   Facsimile:      (713) 437-1810
15

16 Attorneys for Defendant FUNimation Productions, Ltd.
   d/b/a FUNimation Entertainment
17

18            **IN THE UNITED STATES DISTRICT COURT**
19               **CENTRAL DISTRICT OF CALIFORNIA**
20                                                CV13-  6268 SVW (SHx)
   NICHOLAS LYON, an individual,          CASE NUMBER: ___
21
   Plaintiff,
22            vs.                          **NOTICE OF REMOVAL**
23 FUNIMATION PRODUCTIONS, LTD, dba
   FUNIMATION ENTERTAINMENT, &
24 AMERICAN UNITED MEDIA, LLC, dba
   IFA DISTRIBUTION
25
   Defendants.
26

27       Defendant FUNimation Productions, Ltd. ("FUNimation") files this Notice
28
   of Removal in the above-styled matter, pursuant to 28 U.S.C. §§1441 *et seq.* and

1332, and hereby removes this action from the Superior Court of California for the County of Los Angeles, Central District to the United States District Court for the Central District of California, Western Division.   In support of this Notice of Removal, Defendant submits as follows:

1.

On August 6, 2013, Nicholas Lyon ("Plaintiff") filed a complaint against Defendants FUNimation and American United Media, LLC in the Superior Court of the State of California for the County of Los Angeles, Central District, styled as Case No. BC517450.

2.

Pursuant to 28 U.S.C. §§1332, 1441, and 1446, and without prejudice to any defenses it may have to Plaintiff's action, FUNimation files this Notice of Removal based on diversity of citizenship.

3.

FUNimation Productions, Ltd. is a Texas Limited Partnership with its principal place of business in Flower Mound, Texas.  FUNimation is a citizen of the State of Texas.

4.

"FUNimation Entertainment" is not a party in this matter.  "FUNimation Entertainment" is a d/b/a of FUNimation Productions, Ltd.  There is no legal entity

known as FUNimation Entertainment.  It therefore has no citizenship for diversity purposes.

5.

American United Media, LLC ("AUM") was, or purported to be, a Delaware Limited Liability Company with its business address at the offices of National Registered Agents, Inc., in Dover, Delaware.   According to public records available from the Delaware Secretary of State ("SOS"), AUM is not in good standing, and has not been since June 1, 2012.

6.

On August 16, 2012, Plaintiff filed a "Proof of Service of Summons" with the state court stating that AUM had been served with process on August 12, 2013, through AUM's registered agent, National Registered Agents, Inc., in Dover, Delaware. (*See* Proof of Service at Ex. A.)  Pursuant to the procedures of the Delaware SOS, a registered agent is not authorized to accept service on behalf of an LLC that is not in good standing, such as AUM.  Rather, service of process on an inactive LLC must be accomplished directly through the Delaware SOS.

7.

Upon information and belief, the Delaware SOS has not been served with process on behalf of AUM in this matter.  Consequently, AUM has not been "properly joined and served" and its citizenship is irrelevant for purposes of

diversity jurisdiction.  28 U.S.C. §1441(b)(2); *see also Republic Western Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991) (stating that a resident defendant who has not been served does not defeat jurisdiction for diversity purposes).

8.

"IFA Distribution" is not a party before the Court.  Upon information and belief, "IFA Distribution" is a d/b/a of AUM.  Upon information and belief, IFA Distribution is not a separate entity.  It therefore has no citizenship for diversity purposes.

9.

Upon information and belief, Nicholas Lyon is a domiciliary and citizen of the State of California.

10.

Based on the above, only one defendant, FUNimation, has been "properly joined and served" with process and is before the Court.  FUNimation is a citizen of Texas and Plaintiff is a citizen of California.  Complete diversity therefore exists.

11.

Alternatively, even if AUM had been properly served with process and its citizenship could be considered, there still would be complete diversity.  When a

company is not in good standing and therefore considered inactive, such as AUM, courts limit how they view citizenship for purposes of diversity, although there is a variety of approaches among the circuits. *See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers, Inc.,* 933 F.2d 131, 141 (2d Cir. 1991); *Midatlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995), *cert. dismissed*, 116 S. Ct. 32 (1995); *Athena Auto., Inc. v DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999); *Harris v. Black Clawson Co.,* 961 F.2d 547, 550-51 (5th Cir. 1992); *Holston Investments, Inc. B.V.I. v. LanLogistics Corp.,* 677 F.2d 1068, 1071 (11th Cir. 2012), *cert. dismissed*, 133 S. Ct. 499 (2012). In this District, an inactive company is considered a citizen of both its place of incorporation and its last principal place of business. *Sanderson v. Brooks,* No. CV13-03497-ODW (SHx) (C.D. Cal. July 3, 2013). This is in contrast to the rules governing citizenship for an active LLC, to which is imputed the citizenship of each of its members. *Metalmark Northwest, LLC v. Stewart*, No. 06-35321, 2008 WL 361039, *1 (9th Cir. Feb. 11, 2008).

12.

Although information concerning AUM's membership does not appear to be public, based on the limited information available in the public records, it appears that: (1) AUM was incorporated in Delaware; (2) it has not been in good standing since June 1, 2012; and (3) AUM's Managing Member, Gen Fukunaga, is a Texas citizen who performed all business on AUM's behalf exclusively from Texas.

Based on this information, AUM should be considered a citizen of Delaware and Texas. Complete diversity therefore still would exist even if AUM were properly before the Court.

13.

Based upon Plaintiff's Complaint and demands, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Plaintiff's claims involve claims for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and involuntary dissolution. Plaintiff's complaint seeks both compensatory and punitive damages. *See* Plaintiff's Complaint at ¶ 68. In addition, and further going to the amount of controversy here, Plaintiff alleges that: (a) the relevant parties were to contribute each "$250,000" for "production of the Motion Picture" for a total of $500,000; (b) he was to receive at least "30% of net receipts" based on revenue received for the Motion Picture; and (3) he was to receive $20,000, and other additional compensation, for his "literary rights." *See id.* ¶¶ 14, 17, 24, 35-36. Plaintiff also alleges that he is entitled to receive a share of the LLC created to produce and distribute the Motion Picture. *Id.* Based on these allegations, the required jurisdictional amount is present.

14.

In addition, because ultimately the parties' dispute is subject to arbitration, and the amount in controversy involved in the claims subject to arbitration exceed the sum of $75,000, exclusive of interest and costs, the required jurisdictional amount is present. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 256-57 (5th Cir. 1996) (explaining that the amount in controversy for purposes of federal jurisdiction in a case involving arbitration is equal to the amount at issue in the underlying arbitration).

15.

FUNimation was served with process on August 12, 2013. Thus, this Notice of Removal is timely pursuant to 28 U.S.C. §1446(b)(1).

16.

Because FUNimation is the only "properly served and joined defendant" in this matter, it need not obtain the consent of AUM for removal. Parties not served are not required to join in removal. *Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1429 (9th Cir. 1984); *see also Republic Western Ins. Co.*, 765 F. Supp. at 629.

17.

All conditions and procedures for removal have been satisfied. A filing fee is tendered herewith.

18.

Copies of the docket sheet and all pleadings, process, orders and other filings in the state-court suit are attached as Exhibit A and incorporated by reference to this notice, as required by 28 U.S.C. §1446(a).

19.

Venue is proper in this district under 28 U.S.C. §1441(a) because the state court where the suit has been pending is located in this district.

20.

Pursuant to 28 U.S.C. §1446(d), promptly after the filing of this Notice of Removal with this Court, FUNimation will file a copy of the Notice of Removal with the clerk of court for the Superior Court of California for the County of Los Angeles, Central District and will give prompt written notice to Plaintiff as required by 28 U.S.C. §1446(d).

WHEREFORE, Defendant removes this action to this Court.


DATED:  August 26, 2013                    NESBITT & NESBITT, LLP

                                           By:_____
                                              Paul B. Nesbitt, Esq.
                                              Attorneys for Defendant
                                              FUNimation Productions, Ltd. d/b/a
                                              FUNimation Entertainment

{HD051218.2}                Notice of Removal - 8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of August, 2013, a true and correct copy of the foregoing instrument was forwarded to counsel for Plaintiff via personal service and/or certified mail, return receipt requested, postage prepaid and properly addressed as follows:

Patricia A. Kinaga
KINAGA LAW FIRM
617 South Olive Street, Suite 1210
Los Angeles, CA 90014
Attorney for Nicholas Lyon

PAUL B. NESBITT

EXHIBIT "A"

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FUNimation Productions, LTD. dba FUNimation Entertainment and
American United Media, LLC. dba IFA Distribution

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Nicholas Lyon, an individual

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 0 6 2013

JOHN A. CLARKE, CLERK

BY AMBER HAYES, DEPUTY

---

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 N. Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):* **BC517450**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Patricia Kinaga, Jean Chung, Kinaga Law Firm, 617 S. Olive St., Ste 1210, LA, CA 90014; (213) 623-8588

**John A. Clarke**

DATE: August 6 2013 AUG 0 6 2013
*(Fecha)*

Clerk, by _____ **Amber Hayes** _____ , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILED
CLERK, U.S. DISTRICT COURT, CENTRAL

AUG 08 2013

JOHN A. CLARKE, CLERK

BY ANGELA HALSELL, DEPUTY



90046
A6009

1 | PATRICIA A. KINAGA, SBN 129645
DANIEL HO, SBN 205852
2 | WOO JEAN CHUNG, SBN 266838
KINAGA LAW FIRM
3 | 617 S. Olive Street, Suite 1210
Los Angeles, CA   90014
4 | pkinaga@kinagalawfirm.com
jchung@kinagalawfirm.com
5 | Tel: 213-623-8588
Fax: 213-623-8788
6 |
Attorneys for Plaintiff
7 | NICHOLAS LYON

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 06 2013

JOHN A. CLARKE, CLERK

BY AMBER HAYES, DEPUTY

015 Richard Fruin

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF LOS ANGELES

10 | NICHOLAS LYON, an individual,

Plaintiff,

v.

FUNIMATION PRODUCTIONS, LTD.,
dba FUNIMATION ENTERTAINMENT, &
AMERICAN UNITED MEDIA, LLC, dba
IFA DISTRIBUTION,

Defendants.

Case No. _____ **BC517450**

COMPLAINT

1. Breach of Contract

2. Breach of Covenant of Good Faith and Fair
Dealing

3. Promissory Fraud [False Promises]

Plaintiff Nicholas Lyon on information and belief makes the following allegations:

**JURISDICTION AND VENUE**

1.      Defendant American United Media, LLC (AUM) was at relevant times doing business at 7119 Sunset Blvd., Suite 403, Los Angeles, CA. 90046. Further, AUM is also doing business in Los Angeles County under the name IFA Distribution, whose address is 10250 Constellation Blvd. 2900, Los Angeles, CA 90067

2.      The acts giving rise to the causes of action arose in Los Angeles County, California.

3.      Plaintiff, SC Films International (hereinafter "SC Films") and defendant AUM entered into and executed in Los Angeles County an agreement entitled "Confidential Bullet Term Sheet" (hereinafter referred to as "Original Agreement") for the production of a film to be entitled "Bullet" (hereinafter Motion Picture).

- 1 -
Complaint

4.   Plaintiff is a resident of Los Angeles County, California.

5.   Matthew Joynes, the chair and a founder and shareholder of SC Films and a major witness to the factual allegations set forth herein, is a resident of Los Angeles County, California.

6.   SC Films is headquartered in Los Angeles County, California.

7.   Defendant FUNimation Entertainment (hereinafter "FUNimation") is a fictitious name for FUNimation Productions, Ltd., a Texas limited partnership. FUNimation is a film and television company which distributes productions in North America, and has substantial contact with California given that many of its productions, including the Motion Picture, are made in California. Specifically, FUNimation entered into a contract with defendant AUM concerning production of the Motion Picture, FUNimation has met in Los Angeles, and other locations in California (including Lancaster) to, inter alia, visit the production sets, attend meetings, including with the director, editor and other personnel working on the Motion Picture, view daily footage of the Motion Picture, and have been in California to personally advertise the Motion Picture.

## THE PARTIES

8.   Plaintiffs Nicholas Lyon is a writer, director and producer of films.

9.   Defendant American United Media, LLC, is a limited liability company which produces top-tier feature films and television projects throughout the world.

10.   Defendant FUNimation is film and television company known mainly for its distribution of Japanese anime productions.

## FACTS COMMON TO ALL CAUSES OF ACTION

11.   This dispute concerns purported agreements between the parties and/or FUNimation's predecessors regarding the production and ownership of a motion picture entitled "Bullet" (the "Motion Picture"). The Motion Picture will star actor Danny Trejo, known for his roles in gritty films including "Machete" and television appearances in series such as "Breaking Bad", and as a dark action film will be in direct contrast with FUNimation's anime cartoons.

12.   Plaintiff entered into the Original Agreement, on or about September 2, 2012, for the purpose of "developing, producing, completing and delivering the motion picture presently entitled "Bullet"".

- 2 -

1       13.    By the Original Agreement, all the parties—which was defined to consist of Plaintiff

2  Lyon, SC Films and AUM-- agreed to create a special purpose vehicle entity to hold and manage the

3  rights, produce, and own the Motion Picture.

4       14.    By the Original Agreement, SC Films and AUM were to contribute a minimum of

5  $250,000 each of equity for production of the Motion Picture.

6       15.    By the Original Agreement, Plaintiff was to contribute director services to the production

7  and provide the script.

8       16.    By the Original Agreement, Lyon would receive "A NICK LYON FILM" credit on all

9  posters, DVD covers and advertisements.

10       17.    By the Original Agreement, Lyon was to receive 30% of net receipts, defined as adjusted

11  gross receipts; AUM and SC Films were to each receive 35% of net receipts.

12       18.    By the Original Agreement, each party promised to fulfill their obligations and exercise

13  their rights in a manner that would reflect favorably at all times on the good name, goodwill, and

14  reputation of all the parties to the Original Agreement.

15       19.    By the Original Agreement, all the parties were required to exchange and approve "all

16  relevant fully executed agreements by all parties".

17       20.    By the Original Agreement, all parties promised to avoid "deceptive, misleading, or

18  unethical practices" and to comply with all applicable laws and regulations.

19       21.    Without notice to Plaintiff, just two days after execution of the Original Agreement,

20  Defendants AUM and FUNimation executed an agreement entitled "Deal Memo" (hereinafter

21  "AUM/FUNimation Agreement") whereby AUM purportedly agreed to "produce and deliver a live

22  action motion picture currently titled [Bullet]".

23       22.    The AUM/FUNimation Agreement makes absolutely no reference to Plaintiff, including

24  his role, as set forth under the Original Agreement, as director of the Motion Picture and instead

25  purports to grant FUNimation "full approval rights over all aspects of the production, including the

26  script, the primary cast, director and key creative as well as business and creative control of the

27  Property", and purports to grant FUNimation 50% equity in the Motion Picture.

28  ///

23. On January 8, 2013, unaware of the AUM/FUNimation Agreement, Plaintiff signed the assignment of his copyright and intellectual property rights ("Assignment of Copyright and Intellectual Property Rights").

24. On January 10, 2013, unaware of the AUM/FUNimation Agreement, Plaintiff signed the agreement to sell his literary rights to his script for $20,000 ("Agreement to Sell Literary Rights").

25. Without notice to Plaintiff, a Limited Liability Company named Bullet Film Production Company, L.L.C., (hereinafter "LLC") was established; as set forth the LLC's Operating Agreement, dated January 18, 2013, the purpose of the LLC is:

> "[T]o develop and produce for Sale or assignment to a Distributor and/or to otherwise exploit the Motion Picture ["Bullet"] and ancillary rights to the Motion Picture and engage in any lawful business activities reasonably related to any of the foregoing."

26. Defendants AUM and FUNimation are purported to have 65% ownership interest in the LLC, in contravention of the Original Agreement, which granted AUM only 35% interest, in order to gain majority control over the Motion Picture. The remaining 35% ownership interest was vested in SC Films International.

27. Defendants AUM and FUNimation conspired to name FUNimation as Manager in the LLC's Operating Agreement, with broad authority to expend the LLC's funds "and in such amounts as the Manager, in his sole discretion, shall determine is reasonably necessary to effectuate the purposes" of the LLC, is authorized to execute agreements on behalf of the LLC, is authorized to manage, control and borrow money on behalf of the LLC, is authorized to enter into agreements on behalf of the LLC with motion picture or television production companies, or, inter alia, other third parties to assist in the production of the Motion Picture. Gen Fukunaga signed the Operating Agreement as Manager of the LLC.

28. Plaintiff has learned that Gen Fukunaga, who signed the AUM/FUNimation Agreement as President of FUNimation is also the Managing Partner of AUM.

///

///

- 4 -

Complaint

29.   Defendants failed to name Plaintiff as either a member of the LLC, nor a signatory on the Operating Agreement, and accordingly Plaintiff is therefore not bound by the arbitration clause (Section 15.6) or the clause purporting to set forth the applicability of Texas law (Section 15.5).

30.   The LLC was established and the Operating Agreement entered into in direct contravention of the Original Agreement, by which defendant AUM agreed to create *with Plaintiff* and SC Films International the very vehicle purported to be created by the LLC.

31.   Further, the LLC was established and the Operating Agreement entered into in direct contravention of the Original Agreement, which prohibited AUM from entering into agreement which would interfere, impair or conflict with the terms and conditions of the Original Agreement, or from engaging in any unethical, deceptive, or misleading practices.

32.   Plaintiff was not informed that the LLC was being established and the Operating Agreement entered into until after production had commenced, and repeatedly asked FUNimation why he had been excluded from the formation of the LLC.  To date, he has never been told why he was not included in the LLC.

33.   Instead, he was in the middle of shooting the Motion Picture on location when he was sent the agreement for directing services (hereinafter Agreement for Directing Services") under the LLC letterhead; he requested an opportunity to have an attorney review the agreement; given the fact that defendants have excluded him from the formation of the LLC, but was told his signature was needed immediately or the production would stop.

34.   On February 19, 2013, Plaintiff asked all of the parties (FUNimation, SC Films International, and AUM) to the LLC as to why he had not been included in its formation; SC International subsequently advised that it had no objection to Plaintiff being included in the LLC.

35.   Plaintiff continued his repeated questioning as to why he had not been included in the LLC, and in fact stated on March 6, that as 30% owner of the film, he could not understand why he was not given a share in the LLC with voting power. Plaintiff repeatedly asked to be included in the LLC. Defendants FUNimation and AUM continued to refuse adding Plaintiff to the LLC and SC International pointed out on March 18 that to do so would divest Defendants of majority control of the LLC.

///

- 5 -

1    36.    Also on March 18, Plaintiff complained because he had not been paid fully pursuant to
2  the agreements he had entered into when he was unaware of the LCC creation and Operating
3  Agreement, and objected to the validity of the assignment of his copyright and intellectual property
4  rights which were made before he had learned he had been excluded from the LLC. Specifically, he was
5  owed sums for directing, for the script, plus additional sums given that that the budget exceeded
6  $500,000. Given payments that were made to him to date, he is owed at least $27,000.

7    37.    Per the Agreement for Directing Services, Plaintiff was contracted to not only direct the
8  filming but also direct the editing in post production.

9    38.    On April 8, after Plaintiff had fulfilled his duties to complete the filming of the Motion
10  Picture, he attempted to secure the Motion Picture's hard drives to work on post production editing but
11  Defendant FUNimation refused Plaintiff access to same. Instead, Plaintiff was informed that the hard
12  drives would be placed in a vault pending resolution of legal issues with SC Films International.

13    39.    April 10, Plaintiff was advised that AUM's CEO Robert Rodriguez had stated AUM
14  never intended to pay Plaintiff.

15    40.    Numerous attempts have been made by Plaintiff and SC International to resolve the
16  issues which have arisen due to Defendants' actions.

17    41.    On August 2, Plaintiff was informed that FUNimation has been editing the Motion
18  Picture without him by an editor, Julio Saldarriaga, who during the first week of April, had advised
19  Plaintiff that according to FUNimation, the Motion Picture had been vaulted while the legal issues are
20  being resolved.

21    42.    Since at least February 7, 2013 the media has reported that the Motion Picture is being
22  directed by Plaintiff, however, given Defendants' refusal to allow Plaintiff access to continue directing,
23  Plaintiff's credit as director appears to be in jeopardy, leading to reputation damages.

24    43.    From July 18-21, 2013, Defendants advertised the Motion Picture at the widely attended
25  San Diego Comic Con Convention. In direct contravention of the Original Agreement, the
26  advertisements, including the large poster displayed at Defendants' booth, did not list the Motion
27  Picture as "A Nick Lyon Film".

28  ///

- 6 -
Complaint

1    44.    The website for the Motion Picture, www.bullet-movie.com also fails to identify the

2  Motion Picture as "A Nick Lyon Film".

3    45.    The trailer for the Motion Picture fails to identify the Motion Picture as "A Nick Lyon

4  Film".

## FIRST CAUSE OF ACTION

### Breach of Contract

8    46.    Plaintiff realleges and incorporates by reference Paragraph 1 through 45.

9    47.    Defendants have breached the Original Agreement by their failure, inter alia, to include

10  Plaintiff in the LLC, when the Original Agreement stated that all parties to the Original Agreement

11  would create the special vehicle entity—i.e., the LLC—to produce the Motion Picture.

12    48.    Defendants further breached the Original Agreement, inter alia, by their failure to

13  provide Plaintiff the tools necessary to fulfil his duties as post production director; in fact, Plaintiff has

14  been informed that Defendant FUNimation is editing without him, even though he was previously told

15  that the editing was being placed on hold while the pending legal issues are being resolved.

16    49.    Defendants further breached the Original Agreement, inter alia, by failing to provide

17  Plaintiff credit in advertising of the Motion Picture, to wit, "A Nicholas Lyon Film", including the

18  Motion Picture's website and large poster displayed to large audiences at San Diego's Comic Con,

19  causing reputational damages insofar as, inter alia, members of the industry had been informed that

20  Plaintiff was making the Motion Picture and his exclusion on the advertising credits infer that he has

21  been removed from the production

22    50.    Defendants, by giving themselves rights as Manager of the LLC and majority

23  shareholders, are uniquely situated to control the management of the Motion Picture, with the ultimate

24  goal of incurring damages--preventing Plaintiff from receiving any net receipts, consistent with Robert

25  Rodriguez' statement that Plaintiff will not receive any monies from the film project nor own any

26  rights.

27    51.    Defendants breached the Original Agreement by giving themselves an ownership interest

28  to a combined 50% when AUM only owned a 35% interest per the terms of the Original Agreement,